*Thurman, J.
That a widow is dowable of wild lands in Ohio has long been settled. Alien v. McCoy, 8 Ohio, 464. That she is bound to pay the taxes upon such lands when assigned to her for dower, and that her failure to do so may result in a forfeiture of her estate, is expressly provided by the statute. Swan’s Rev. Stat. 934, secs. 1, 8. It follows, in our judgment' that she may by a sale of timber raise money to pay the taxes; otherwise *161 the estate would be a burden instead of a benefit to her. It was said by the court, in Allen v. McCoy: “ It. is argued, dower in wild lands is a useless property. It can be of no value to the widow in its wild state, and it can not be reduced to cultivation without forfeiting the estate itself. This argument is too subtile to be received as premises for the conclusion it seeks to enforce. The commoDlaw doctrine of waste has never been recognized in Ohio, either as an incident of title or as affording a remedy for wrong.”
Hence, it is well settled that many things may be done by a tenant for life here, that if done in England would be waste ; as, for example, the conversion of meadow or pasture into plowland, or woodland into a farm, etc. And it is also settled here that timber cut in improving the land belongs to the tenant for life and not to the reversioner.
We are also of opinion that where, as in the present case, the dower assigned consists of certain wholly unimproved and unproductive town-lots and a tract of woodland, the assignment is to be considered so far an entirety as to authorize the sale of timber to pay the taxes on the lots as well as on the land.
But we think the right to sell goes yet. further. It may be very reasonable, nay necessary, that the widow should employ an agent to make the sales of timber, collect the proceeds, pay the taxes, and oversee the property to protect it against trespasses or other injury. She may be disqualified by age, sickness, non-residence, or want of skill from giving her personal attention to these matters, which concern the reversioner or remainder-man quite as much as *they do her. The agent thus employed must be paid, and, for nearly the same reason that she may sell timber to pay taxes, she may do so to pay his compensation. She is not bound to resort to her other means to pay either the one or the other. Dower is given to her for her benefit, and not to impose upon her the unalleviated • burden of paying taxes, and protecting the property for the mere benefit of the reversioner.
This brings us to the question, how did Mrs. Crockett exercise this right. Did she, under a pretense of exercising it, sell timber merely for her own emolument? She expressly denies the imputation, and the testimony fully supports her. She says, in her answer, that the sales were made with no other object than to raise means to pay the taxes and the incidental expenses of overseeing the premises, and such is the testimony.
*162 It is argued, however, that she sold more timber than was necessary to pay the taxes due at the time the sales were made ; but it does not appear that the amount of the sales exceeded the taxes .and agents’ compensation then due.
Again, the sales were made in the fall of 1848, or winter of 1848-9, and the cutting of the timber completed early in the March following. Before the sales were made, the taxes of 1848 had become due, and before the proceeds of the sales became payable, the taxes of 1849 had become a lien on the premises. Swan’s Stat. 913, sec. 21. Under these circumstances it was reasonable to raise enough money to pay the taxes of both years ; and the amount actually raised was very little, if any more, than sufficient for that purpose.
Another view of this case may be taken. The felling of the trees in question had completely ceased before the filing of this bill. All that the contracts covered had been cut, and there was no intention or throat to cut any more. There certainly was no design on the part of Mrs. Crockett, or her agents, that the purchasers should exceed the license given them by the contracts; and if they did somewhat exceed it, which is a disputed question, the wrong had been fully ^committed before the suit was brought; and there was no reason to apprehend a repetition of it. Great care was taken by the agents of Mrs. Crockett, in making the contracts, to guard against unnecessary injury to the inheritance, and, while it is clear that no fraud can be imputed to her, or them, we are not satisfied that a case of fraud is made out against the purchasers.
How then stands the case ? Certain trees were cut down; the complainants say unlawfully. If so, the law furnishes an adequate remedy. There was no good reason for coming into equity, unless .an injunction was necessary. But no injunction was needed, for •the felling had ceased, and there was no intent to cut more. And these facts were known to the complainants, or might have been •easily ascertained. It might be inferred from what was said by Lord Hardwicke, in Smith v. Cooke, 3 Atk. 381, that the bare fact that a tenant, who is yet in possession, has committed waste, is a sufficient ground for an injunction to stay future waste. But there is no reason to suppose that the remark of the chancellor -vas .meant to apply to a case in which the intent to commit future waste is negatived. If there is no such intent, or any good reason •.to apprehend it, an injunction ought not to be allowed. If the *163 tenant claims a right to do that which, if done, would be waste, such claim, with a reasonable ground to believe that it will be acted upon, may well require the interference of the chancellor; and a fortiori should he interfere, if waste has been committed, and' a right to repeat it is asserted.
But here, there has been no intention on the part of Mrs. Crockett to do or permit anything that might not lawfully bo done; and. she makes no claim of right that is not well founded. Her claim is, that she has a right to sell timber to pay taxes and the expenses of protecting the property; and so say we. And, as to the other defendants, they do not pretend, and never have pretended, to be entitled to cut any trees except those cut before the filing of the bill. We think, then, that there is no cause for an injunction, and, without an injunction, the general rule is, there is no account.
* “ An account for waste committed, is only consequential upon an injunction, or upon some other matter of original jurisdiction ; it is not in itself a substantiative ground of equitable relief, as the remedy at law is adequate.” 1 White’s Eq. Cases, 554.
“ It may be laid down generally,” said Lord Brougham in Parrott v. Palmer, 3 My. & K. 632, “ that, unless in the case of mines, the rule is, no injunction, no account.”
So in Winship v. Pitts, 3 Paige 259, it'was held that: “ In ordinary cases, the account for waste already committed, is merely indidental to the relief by injunction against future waste, and is directed upon the principle of preventing a needless multiplication of suits.”
Hpon the whole, we are of opinion that the complainants are not entitled to either an injunction, or an account, .and their bill must therefore be dismissed.